**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JOAQUIN LOPEZ,
Plaintiff,
v.
SARGENT SCORTS, ET AL.,
Defendants.

No. 2:26-cv-5091-AH-AJR

**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

## I.
## INTRODUCTION

On April 16, 2026, *pro se* Plaintiff Joaquin Lopez ("Plaintiff"), a pretrial detainee presently incarcerated at the West Valley Detention Center in Rancho Cucamonga, California filed this civil rights action pursuant to 42 U.S.C. § 1983 (the "Complaint") against Officers Bryan Jimenez, J. Gomez, Juan Collazos, D. Alejandre, and Sergeant Patton, all sued in their official capacities. (Dkt. 1 at 3-4.) Plaintiff also filed a Request to Proceed *In Forma Pauperis*. (Dkt. 2.)

On May 27, 2026, the Court screened the Complaint pursuant to 28 U.S.C. § 1915A and dismissed the Complaint with leave to amend for various pleading

deficiencies (the "Dismissal Order"). (Dkt. 5.) On June 10, 2026, Plaintiff filed the operative First Amended Complaint (the "FAC"), which names only Officers Bryan Jimenez, J. Gomez, and Juan Collazos as Defendants (collectively, "Defendants"), all sued in their official capacities. (Dkt. 12.)

## II.

## SUMMARY OF ALLEGATIONS IN THE FAC

As a preliminary matter, although the original Complaint contained somewhat more detailed factual allegations, the FAC abandons many of those allegations and instead relies almost entirely on generalized and conclusory assertions. Because an amended complaint supersedes the original Complaint and may not be incorporated by reference to any part of the original Complaint, the Court evaluates only the allegations contained in the FAC. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent. In other words, the original pleading no longer performs any function." (internal citations and quotation marks omitted)).

In the operative FAC, liberally construed and although largely incomprehensible, Plaintiff now alleges that Defendants "did not feed [him] right," "used excessive force causing [him] multiple injuries and fractured broken bones," and "gave [him] no medical attention regarding [his] hurt injuries and stomach digestive problems." (Dkt. 12 at 4.) Plaintiff further alleges that Defendants destroyed his mail. (Id.) Plaintiff also alleges that Defendants used "tear gas," which allegedly caused "[his penis] and [genital] to not produce ejaculation." (Id.) In addition, Plaintiff alleges that the "contamination is still going." (Id. at 5.) Based on these allegations, Plaintiff states that "on top of this constitutional and civil rights violation," he also seeks relief under California's Bane Act. (Id. at 4.) Plaintiff again seeks $5 million in damages. (Id. at 5.)

## III.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); see also Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641-42 (9th Cir. 2018).

Moreover, when a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. See Byrd, 885 F.3d at 642; Hoffman v. Preston, 26 F.4th 1059, 1063 (9th Cir. 2022) ("We construe pro se complaints liberally and afford the petitioner the benefit of any doubt."). In giving liberal interpretation to a *pro se* complaint, the Court may not, however, supply essential elements of a claim that were not initially pled. See Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014). The Court must give a *pro se* litigant leave to amend the complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted).

For the reasons discussed below, the Court has screened the FAC and determined that it must be DISMISSED WITH LEAVE TO AMEND.

## IV.

## DISCUSSION

### A. The FAC Fails To Comply With Rule 8.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rule 8(e)(1) instructs that "[e]ach averment of a pleading shall be simple, concise, and direct." A complaint violates Rule 8 if a defendant would have difficulty responding to the complaint. See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011). Further, "bare assertions" that merely recite elements of a claim "disentitles them to the presumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).

Here, the FAC again fails to satisfy Rule 8 pleading requirements. Liberally construed, Plaintiff appears to assert claims based on excessive force, denial of medical care, an unspecified ongoing "contamination," destruction of mail, and the use of tear gas allegedly causing an inability to ejaculate. (Dkt. 12 at 4-5.) However, Plaintiff provides virtually no factual support for any of these claims. For example, Plaintiff does not allege the circumstances surrounding the alleged use of force, whether he was resisting or otherwise posed a threat, what specific actions each Defendant took, what medical treatment he requested, who denied that treatment, or what he means by his assertion that "the contamination is still going." (Dkt. 12 at 5.) Likewise, Plaintiff alleges only that Defendants destroyed his mail and used "tear gas," allegedly causing an inability to ejaculate, but provides no factual context regarding when these events occurred, which Defendant engaged in the alleged conduct, what constitutional right was allegedly violated, or how the alleged conduct caused his injuries. (Id. at 4.)

Nor does Plaintiff clearly distinguish which allegations pertain to which defendant. Instead, the FAC repeatedly refers only to "they" collectively without identifying which defendant engaged in the alleged conduct. (Dkt. 12 at 4-5.) Such undifferentiated pleading fails to provide each defendant with fair notice of Plaintiff's claims or the grounds upon which they rest. See Cafasso, 637 F.3d at 1059; see also Steinley v. Health Net, Inc., 2018 WL 6985318, at *5 (C.D. Cal. Dec. 4, 2018) ("Generally, '[u]ndifferentiated pleading against multiple defendants is

improper' because it fails to give each defendant notice of the specific allegations and claims that pertain to it.").

Accordingly, even construed liberally, the FAC fails to contain facts sufficient to state a plausible constitutional claim, and the Court may not supply essential elements that Plaintiff has failed to plead. See Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014).

**B. Plaintiff Fails To State A Claim For Municipal Liability Under *Monell*.**

Plaintiff again sues Defendants solely in their official capacities. (Dkt. 12 at 3.) Official-capacity claims against county employees are construed as claims against the municipality itself, here, the County of San Bernardino. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). However, Plaintiff may not sue the County of San Bernardino for alleged constitutional violations on a theory of *respondeat superior*, which is not a theory of liability cognizable under Section 1983. See Connick v. Thompson, 563 U.S. 51, 60 (2011); Iqbal, 556 U.S. at 676; Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981). Thus, the County of San Bernardino cannot be sued merely because a deputy sheriff or sergeant allegedly violated Plaintiff's constitutional rights. Instead, the County of San Bernardino may be held liable **only if the alleged wrongdoing was committed pursuant to a municipal policy, custom, or usage**. See Bd. of Cnty. Comm'r of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 402-04 (1997); Monell v. N.Y. Cty. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978) ("Monell"); see also Horton by Horton v. Cty. of Santa Monica, 915 F.3d 592, 603-04 (9th Cir. 2019) ("[M]unicipalites may be liable under § 1983 for constitutional injuries pursuant to . . . a pervasive practice or custom.").

A plaintiff seeking to impose liability on a municipality under Monell must allege facts showing that: (1) the constitutional violation was the result of a governmental policy or a longstanding practice or custom; (2) the individual who committed the constitutional violation was an official with final policy-making authority; or (3) an official with final policy-making authority ratified the

unconstitutional act. See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Additionally, liability under Monell may not be predicated on "isolated or sporadic incidents," but "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Gordon v. Cnty. of Orange, 6 F.4th 961, 974 (9th Cir. 2021).

Here, the FAC alleges none of these circumstances. Aside from conclusory allegations that Defendants used excessive force, denied Plaintiff medical care, subjected him to an unspecified ongoing "contamination," destroyed his mail, and used "tear gas," Plaintiff does not allege that any of the purported constitutional violations resulted from an official policy, longstanding custom, widespread practice, failure to train, or decision of a final policymaker attributable to the County of San Bernardino. See Starr, 652 F.3d at 1216 ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."); see also AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (pleading standards set forth in Starr govern municipal liability claims).

Accordingly, Plaintiff again fails to state a cognizable claim for municipal liability under Monell, and his official-capacity claims against Defendants should be dismissed.

## C. Plaintiff Fails To State A Fourteenth Amendment Claim.

### 1. Legal Standard.

A pretrial detainee's challenge to jail conditions is governed by the Fourteenth Amendment Due Process Clause, not the Eighth Amendment. See Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015) (excessive force claim); Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018) (Kingsley standard applies to detainees' medical care claims). In Kingsley, the Supreme Court held that a pretrial detainee's excessive force claim is governed by a standard of objective

reasonableness and that the defendant's subjective intent is immaterial. Kingsley, 576 U.S. at 396-97. Although Kingsley concerned excessive force, the Ninth Circuit has applied the Kingsley objective standard under the Fourteenth Amendment to pretrial detainees' claims involving medical care and unconstitutional conditions of confinement. See Gordon, 888 F.3d at 1124 (holding that the Kingsley standard applies to detainees' medical care claims; observing that "the Supreme Court has treated medical care claims substantially the same as other conditions of confinement violations").

**2. Excessive Force And Tear Gas.**

"Use of force during pretrial detention is unconstitutionally excessive if it is 'objectively unreasonable.'" Hyde v. City of Willcox, 23 F.4th 863, 870 (9th Cir. 2022) (citing Kingsley, 576 U.S. at 397). Objective reasonableness turns on the "facts and circumstances of each particular case." Kingsley, 576 U.S. at 397 (internal quotation marks omitted). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. "Thus, a court must consider the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (internal quotation marks omitted). Relevant considerations include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.; see also Hyde, 23 F.4th at 870.

Here, liberally construed, Plaintiff alleges that "[Defendants] used excessive force," causing him to suffer "multiple injuries and fractured broken bones." (Dkt. 12 at 4.) Plaintiff further alleges, without elaboration, that Defendants used "tear

gas." (Id.) Even so, the FAC lacks sufficient factual detail to permit the Court to assess whether any alleged use of force was objectively unreasonable under the circumstances. See Kingsley, 576 U.S. at 397.

In particular, Plaintiff does not describe the events precipitating the alleged use of force, the severity of any security concern, whether he was resisting or otherwise noncompliant, whether Defendants reasonably perceived him to pose a threat, the duration of the incident, or whether any efforts were made to temper or limit the amount of force used. Nor does Plaintiff identify which defendant engaged in the alleged conduct, what force each defendant allegedly used, or which actions caused which injuries. With respect to the alleged use of tear gas, Plaintiff does not allege when it was deployed, by whom, under what circumstances, or what injuries resulted from its use. Without such factual allegations, the Court cannot evaluate the relationship between the need for force and the amount of force used or otherwise assess the objective reasonableness of Defendants' conduct. See id.

Accordingly, Plaintiff fails to plausibly allege that any defendant used objectively unreasonable force in violation of the Fourteenth Amendment.

**3. Denial Of Medical Care.**

To prove a claim for allegedly unconstitutional conditions of confinement related to a risk of health, a plaintiff detainee must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved — making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)

(footnote omitted); see also Gordon, 888 F.3d at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." Castro, 833 F.3d at 1071 (internal quotation marks and brackets omitted). "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Id. (internal quotation marks omitted); see also Gordon, 888 F.3d at 1125. Thus, the plaintiff must "prove more than negligence but less than subjective intent — something akin to reckless disregard." Castro, 833 F.3d at 1071; see also Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 928 (9th Cir. 2021) (applying Castro's "reckless disregard" standard to conditions of confinement claims).

Here, with respect to any alleged denial of medical care, the FAC asserts only that Plaintiff was "denied medical attention regarding [his] hurt injuries [including the multiple injuries and fractured broken bones] and stomach digestive problems." (Dkt. 12 at 4.) However, Plaintiff does not identify who denied treatment, when treatment was requested, what medical needs required treatment, what responses Plaintiff received, or how any named defendant personally participated in denying medical care. Plaintiff does not allege facts showing that any defendants' conduct placed Plaintiff at substantial risk of suffering serious harm or that any defendant failed to take objectively reasonable measures to abate any such risk. Conclusory allegations of denied medical treatment, without supporting facts, are insufficient to state a constitutional claim. Plaintiff therefore fails to state a claim based on the denial of medical care under the Fourteenth Amendment.

**D. Plaintiff Fails To State A Claim Based On The Alleged Destruction of Mail.**

Prisoners and pretrial detainees retain certain First Amendment rights with respect to their mail, including a constitutional right of access to the courts. See Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015) ("The First Amendment

guarantees a prisoner . . . a right of meaningful access to the courts."); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) ("The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts[.]"). However, to state a claim based on interference with mail, a plaintiff must allege facts showing, among other things, that the interference was attributable to a particular defendant and, where access to the courts is implicated, that he suffered an actual injury to pending or contemplated litigation. See Lewis v. Casey, 518 U.S. 343, 349-53 (1996) (explaining that to state a viable claim for denial of the right of access to the courts, a plaintiff must allege "actual injury"); Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) ("Actual injury is . . . actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.").

Here, Plaintiff merely alleges that Defendants destroyed his mail. (Dkt. 12 at 4.) Plaintiff does not identify which Defendant allegedly destroyed his mail, when the alleged destruction occurred, whether the interference was isolated or ongoing, or how the alleged conduct hindered Plaintiff's ability to pursue a nonfrivolous legal claim. Plaintiff therefore fails to allege facts sufficient to state either a First Amendment mail-interference claim or a denial-of-access-to-the-courts claim.

## E. Plaintiff Fails To State A Claim Under The Bane Act.

### 1. The Bane Act.

To state a claim under California's Bane Act, a plaintiff must allege facts demonstrating that the defendants interfered with the plaintiff's constitutional rights by "threats, intimidation, or coercion." See Cal. Civ. Code § 52.1; Quezada v. City of Los Angeles, 222 Cal. App. 4th 993, 1007-08 (2014). To state a claim under section 52.1, "requires a showing of an attempted or completed act of interference with a legal right, accompanied by a form of coercion." Lopez v. Cnty. of Tulare, 2012 WL 33244, at *11 (E.D. Cal. Jan. 6, 2012) (internal quotation marks omitted);

see also Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018).

Here, Plaintiff merely states that, "on top of this constitutional and civil rights violation," he also asserts a claim under the Bane Act. (Dkt. 12 at 4.) Aside from that conclusory assertion, however, Plaintiff alleges no fact demonstrating that any defendant interfered, or attempted to interfere, with Plaintiff's constitutional or statutory rights through threats, intimidation, or coercion within the meaning of the statute. Nor does Plaintiff plausibly allege an underlying constitutional violation for the reasons discussed above. Because Plaintiff alleges neither facts establishing an underlying constitutional violation nor facts satisfying the independent elements of a Bane Act claim, Plaintiff fails to state a claim under California Civil Code section 52.1.

**2. California Government Claims Act.**

Under California law, before bringing a state-law claim for money damages against a public entity or a public employee acting within the scope of employment, a plaintiff must timely present a written claim to the appropriate public entity and allege compliance with, or an excuse from, the claim presentation requirements of the California Government Claims Act ("CGCA"). See Cal. Gov. Code §§ 905, 911.2, 945.4, 950.2; see also City of Los Angeles v. Super. Ct., 168 Cal. App. 4th 422, 430 (2008). Plaintiff's California Bane Law claim is subject to these mandatory claim presentation requirements. See Gleason v. Cal. Dep't of Corr. & Rehab., 2020 WL 3411390, at *2 (E.D. Cal. June 22, 2020), adopted, 2020 WL 5110699 (E.D. Cal. Aug. 31, 2020); Hatter v. Dyer, 2016 WL 11518498, at *2 (C.D. Cal. June 14, 2016). Compliance with the CGCA's claim presentation requirements is an element of a state-law cause of action against a public entity or public employee, and a complaint that fails to allege compliance or an excuse for noncompliance fails to state a claim. See State v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1239 (2004); Rubenstein v. Doe No. 1, 3 Cal. 5th 903, 906 (2017).

Here, Plaintiff does not allege that he timely presented a claim to the

appropriate public entity, that the claim was rejected or deemed rejected, or that his compliance with the CGCA should otherwise be excused. See Bodde, 32 Cal. 4th at 1239 ("failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action"); see also City of San Jose v. Super. Ct., 12 Cal. 3d 447, 454 (1974) ("failure to file a claim is fatal to the action"). Accordingly, Plaintiff's Bane Act claim is independently subject to dismissal for failure to satisfy California's mandatory claim presentation requirements.

## V.
## ORDER

For the reasons set forth above, the FAC is dismissed with leave to amend. On or before **August 26, 2026**, Plaintiff shall file a Second Amended Complaint ("SAC") that attempts to remedy the identified defects. If Plaintiff chooses to file a SAC, it should bear the docket number assigned to this case (2:26-cv-05091-AH-AJR), be labeled "Second Amended Complaint," and be complete and of itself without reference in any manner to the original Complaint, FAC, or any other documents (except any documents that Plaintiff chooses to attach to the SAC as exhibits). **Plaintiff is warned that if he does not correct the defects identified above, the Court may recommend that a future complaint be dismissed without leave to amend and that this action be dismissed with prejudice.** Should Plaintiff decide to file a SAC, he is encouraged to utilize the CV-66 form complaint attached to this Order.

**Plaintiff is explicitly cautioned that failure to timely file a SAC, or failure to correct the deficiencies described above, may result in a recommendation that this action be dismissed with prejudice for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).** Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily

dismiss the action by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.

DATED: July 27, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

Attachments:
CV-09, Notice of Dismissal Pursuant to Federal Rules of Civil Procedure 41(a) or (c).
CV-66, United States District Court, Central District of California Civil Rights Complaint.